| Attorney or Party Name, Address, Telephone & FAX Nos., State Bar No. & Email Address | FOR COURT USE ONLY |
|---|---|
| MARCUS G. TIGGS          sbn: 137467<br>mtiggs@lawbwl.com<br>BAYER WISHMAN & LEOTTA<br>1055 Wilshire Blvd., Ste 1900<br>Los Angeles, CA. 90017<br>T: 213-629-880 F: 213-629-8802<br><br>☐ *Individual appearing without attorney*<br>☒ *Attorney for:* Defendant | |

**UNITED STATES BANKRUPTCY COURT**
**CENTRAL DISTRICT OF CALIFORNIA -  LOS ANGELES DIVISION**

| In re:<br>MARIO G. CARDONA,<br><br><br>Debtor(s). | CASE NO.:          2:17-bk-22804-WB<br><br>ADVERSARY NO.:  2:18-ap-01381-WB<br><br>CHAPTER:          13 |
|---|---|
| DANIEL GARZA<br><br><br><br>                                        Plaintiff(s).<br>                    vs.<br>MARIO G. CARDONA<br><br><br><br>                                        Defendant(s). | **UNILATERAL (DEFENDANTS) STATUS REPORT [LBR 7016-1(a)(2)]**<br><br>DATE:          06/04/2019<br>TIME:          2:00 pm<br>COURTROOM:          1375<br>ADDRESS:<br>          255 E. Temple Street<br>          Los Angeles, CA. 90012 |

The parties submit the following Defendant's **UNILATERAL** STATUS REPORT in accordance with LBR 7016-1(a)(2):

**A. PLEADINGS/SERVICE:**

1. Have all parties been served with the complaint/counterclaim/cross-claim, etc. (Claims Documents)?          ☒ Yes   ☐ No

2. Have all parties filed and served answers to the Claims Documents?          ☒ Yes   ☐ No

3. Have all motions addressed to the Claims Documents been resolved?          ☒ Yes   ☐ No

4. Have counsel met and conferred in compliance with LBR 7026-1?          ☒ Yes   ☐ No

---

This form is mandatory.  It has been approved for use in the United States Bankruptcy Court for the Central District of California.

5.  If your answer to any of the four preceding questions is anything <u>other</u> than an unqualified "YES," please

B.  <u>**READINESS FOR TRIAL**</u>:

1.  When will you be ready for trial in this case?

<u>Plaintiff</u>                                  <u>Defendant</u>

                                               Sept 2019

2.  If your answer to the above is more than 4 months after the summons issued in this case, give reasons for further delay.

<u>Plaintiff</u>                                  <u>Defendant</u>

                                      Caseload and see comments pg. 4 Part G

3.  When do you expect to complete <u>your</u> discovery efforts?

<u>Plaintiff</u>                                  <u>Defendant</u>

                                               Up to 90 days

4.  What additional discovery do you require to prepare for trial?

<u>Plaintiff</u>                                  <u>Defendant</u>

                                Possible written discovery/3rd party subpeona(s)

C.  <u>**TRIAL TIME**</u>:

1.  What is your estimate of the time required to present <u>your side of the case</u> at trial (*including rebuttal stage if applicable*)?

<u>Plaintiff</u>                                  <u>Defendant</u>

                                               6 hours

2.  How many witnesses do you intend to call at trial (*including opposing parties*)?

<u>Plaintiff</u>                                  <u>Defendant</u>

                                               2-6

---

This form is mandatory.  It has been approved for use in the United States Bankruptcy Court for the Central District of California.

3.  How many exhibits do you anticipate using at trial?

<u>Plaintiff</u>                                                    <u>Defendant</u>

                                                                   10-15


D.  **PRETRIAL CONFERENCE:**

A pretrial conference is usually conducted between a week to a month before trial, at which time a pretrial order will be signed by the court.  [See LBR 7016-1.]  If you believe that a pre-trial conference is not necessary or appropriate in this case, please so note below, stating your reasons:

|                     <u>Plaintiff</u>                     |                     <u>Defendant</u>                     |
|---|---|
| Pretrial conference ☐ is ☐ is not  requested | Pretrial conference ☒ is ☐ is not  requested |
| Reasons: | Reasons: |
|  | Narrow Issues |

|                     <u>Plaintiff</u>                     |                     <u>Defendant</u>                     |
|---|---|
| Pretrial conference should be set <u>after</u>: | Pretrial conference should be set <u>after</u>: |
| (*date*) _____ | (*date*) _Per Court_ |


E.  **SETTLEMENT:**

1.  What is the status of settlement efforts?

    Brief settlement discussions have been made. Defendant made Settlement

    offer over a month ago. No rejection, acceptance or counter received as of

    Status Report.

2.  Has this dispute been formally mediated?    ☐ Yes   ☒ No
    If so, when?


3.  Do you want this matter sent to mediation at this time?

|                     <u>Plaintiff</u>                     |                     <u>Defendant</u>                     |
|---|---|
| ☐ Yes   ☐ No | ☒ Yes   ☐ No |

---

This form is mandatory.  It has been approved for use in the United States Bankruptcy Court for the Central District of California.

*December 2015*                              Page 3                              **F 7016-1.STATUS.REPORT**

**F.  FINAL JUDGMENT/ORDER:**

Any party who contests the bankruptcy court's authority to enter a final judgment and/or order in this adversary proceeding must raise its objection below.  Failure to select either box below may be deemed consent.

<table>
<tr><td align="center">Plaintiff</td><td align="center">Defendant</td></tr>
<tr><td>☐ I do consent<br>☐ I do not consent<br>to the bankruptcy court's entry of a final judgment and/or order in this adversary proceeding.</td><td>☒ I do consent<br>☐ I do not consent<br>to the bankruptcy court's entry of a final judgment and/or order in this adversary proceeding.</td></tr>
</table>

**G.  ADDITIONAL COMMENTS/RECOMMENDATIONS RE TRIAL:** (*Use additional page if necessary*)

It may be appropriate to delay trial on this matter in light of developments in the district court case, insofar as Plaintiff's action agaisnt he City of Los Angeles, entitled Garza v. City of Los Angeles, 2:16-cv-03579-SVW-AFM (re: Liability of the city under a Monell ratification theory). The District Court granted Plaintiffs Motion for Reconsideration of the Courts prior summary judgment order in favor of the city (finding the City Defendnats were not lible under Monell). A jury trial was scheduled for June 10, 2019 (See attached Minute Order) to decide the liability but has been continued to on or about July 7, 2019.

As to mediation: Defendant is interested in mediation to see if matter can be settled. Previously Plaintiff had expresssed no interest however Defendnat is uncertain of Plaintiff's position at this time.

Respectfully submitted,

Date: _____

Date: __05/24/2019__

_____
Printed name of law firm

__BAYER WISHMAN & LEOTTA_____
Printed name of law firm

_____
Signature

__/s/Marcus G. Tiggs_____
Signature

_____
Printed name

__MARCUS G. TIGGS_____
Printed name

Attorney for: _____

Attorney for: __Defendant_____

---

This form is mandatory.  It has been approved for use in the United States Bankruptcy Court for the Central District of California.

*December 2015*                                    Page 4                                    **F 7016-1.STATUS.REPORT**

# PROOF OF SERVICE OF DOCUMENT

I am over the age of 18 and not a party to this bankruptcy case or adversary proceeding.  My business address is:

1055 Wilshire Blvd., Ste 1900

Los Angeles, CA. 90012

A true and correct copy of the foregoing document entitled: **Def. UNILATERAL STATUS REPORT [LBR 7016-1(a)(2)]**
will be served  or was served **(a)** on the judge in chambers in the form and manner required by LBR 5005-2(d); and **(b)**
in the manner  stated below:

**1**.  **TO BE SERVED BY THE COURT VIA NOTICE OF ELECTRONIC FILING (NEF)**:  Pursuant to controlling General
Orders and LBR, the foregoing document will be served by the court via NEF and hyperlink to the document. On (*date*)
 5/24/2019     , I checked the CM/ECF docket for this bankruptcy case or adversary proceeding and determined that the
following persons are on the Electronic Mail Notice List to receive NEF transmission at the email addresses stated below:

Baruch C Cohen (Cr) bcc@BaruchCohenEsq.com, paralegal@baruchcohenesq.com
Marcus G. Tiggs mtiggs@lawbwl.com
Nancy K Curry (TR) TrusteeECFMail@gmail.com
U S Trustee (LA) ustpregion16.la.ecf@usdoj.gov

☐ Service information continued on attached page

**2. SERVED BY UNITED STATES MAIL**:
On (*date*) 05/24/19 , I served the following persons and/or entities at the last known addresses in this bankruptcy
case or adversary proceeding by placing a true and correct copy thereof in a sealed envelope in the United States mail,
first class, postage prepaid, and addressed as follows. Listing the judge here constitutes a declaration that mailing to the
judge will be completed no later than 24 hours after the document is filed.

| | |
|---|---|
| Co-Counsel for Plaintiff | Co-Counsel for Plaintiff |
| Vincent James DeSimone, Esq. | Kevin Navab, Esq. |
| V. James Desimone Law | 13160 Mindinao Way, Ste 280 |
| 13160 Mindinao Way Suite 280 | Marina Del Rey, CA. 90292 |
| Marina Del Rey, CA 90292 | (via email also: navablaw@gmail.com) |
| (via email also: vjdesimone@gmail.com) | |

☐ Service information continued on attached page

**3.  SERVED BY PERSONAL DELIVERY, OVERNIGHT MAIL, FACSIMILE TRANSMISSION OR EMAIL** (state method
for each person or entity served):  Pursuant to F.R.Civ.P. 5 and/or controlling LBR, on (*date*)  5/24/2019     , I served the
following persons and/or entities by personal delivery, overnight mail service, or (for those who consented in writing to
such service method), by facsimile transmission and/or email as follows.  Listing the judge here constitutes a declaration
that personal delivery on, or overnight mail to, the judge will be completed no later than 24 hours after the document is
filed.

Courts Copy (Box Outside Chambers)
Hon. Julia Brand
United States Bankruptcy Court
255 E. Temple Street
Los Angeles, CA. 90012

☐ Service information continued on attached page

I declare under penalty of perjury under the laws of the United States that the foregoing is true and correct.

| 05/24/2019 | MARCUS G. TIGGS | /s/Marcus G. Tiggs |
|---|---|---|
| *Date* | *Printed Name* | *Signature* |

This form is mandatory.  It has been approved for use in the United States Bankruptcy Court for the Central District of California.

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

## CIVIL MINUTES - GENERAL

| Case No. | 2:16-cv-03579-SVW-AFM | Date | April 12, 2019 |
|---|---|---|---|

| Title | *Daniel Garza v. City of Los Angeles et al.* |
|---|---|

---

Present: The Honorable    STEPHEN V. WILSON, U.S. DISTRICT JUDGE

| Paul M. Cruz | N/A |
|---|---|
| Deputy Clerk | Court Reporter / Recorder |
| Attorneys Present for Plaintiffs: | Attorneys Present for Defendants: |
| N/A | N/A |

**Proceedings:**      IN CHAMBERS ORDER REGARDING PLAINTIFF'S BRIEF ON
*MONELL* LIABILITY [265]

## I.      Introduction

The facts of this case have been discussed in the Court's previous orders and need not be recited in detail here. Prior to the jury's verdict that Defendant Mario Cardona used excessive force against Plaintiff Daniel Garza, the Court granted summary judgment for City Defendants on one of Plaintiff's *Monell* theories, holding that Plaintiff failed to raise a triable issue of fact with respect to City Defendants' ratification of Cardona's twisting Plaintiff's wrists based on an LAPD letter exonerating Cardona. Dkt. 150 at 11-13. However, the Court denied summary judgment for City Defendants on another ratification theory regarding Cardona's use of a wrist lock. *Id.* at 13-14. After the trial, the Court judged as matter of law that Plaintiff's second ratification theory regarding a wrist lock was inadequate because a reasonable jury would not have a legally sufficient evidentiary basis to find that Cardona acted pursuant to an official policy. Dkt. 197 at 15. Thus, the Court rejected both of Plaintiff's *Monell* ratification theories as a matter of law.

Also after the trial, Plaintiff obtained information that Cardona was promoted from Officer to Sergeant. Dkt. 226 at 2. Based on this new evidence, and pursuant to Local Rule 7-18, Plaintiff moved for reconsideration of the Court's prior summary judgment order as it pertained to City Defendants' *Monell* liability on May 25, 2018. *Id.* at ii. The relief that Plaintiff requested in his motion for reconsideration was "leave to seek discovery pertaining to Cardona's promotion." *Id.* at 10.

_____ : _____

Initials of Preparer

PMC

# UNITED STATES DISTRICT COURT
## CENTRAL DISTRICT OF CALIFORNIA

### CIVIL MINUTES - GENERAL

| Case No. | 2:16-cv-03579-SVW-AFM | Date | April 12, 2019 |
|----------|------------------------|------|----------------|

| Title | *Daniel Garza v. City of Los Angeles et al.* |
|-------|----------------------------------------------|

The Court held a hearing on July 23, 2018, after which the Court ordered City Defendants to confirm when Cardona had been promoted. Dkt. 234. City Defendants submitted a declaration of Sergeant John Vasquez, which stated that Cardona was put on a certified "promotional list" on November 16, 2016—which was over seven months before the June 26, 2017 verdict in this case. Dkt. 235 ¶ 3. The declaration also stated that the "effective date" of Cardona's promotion was August 6, 2017—less than two months after the jury verdict. *Id.* The Court found the declaration inadequate and ordered Sergeant Vasquez to personally appear. Dkt. 238. Sergeant Vasquez appeared at a hearing on September 20, 2018. Dkt. 244. The Court concluded that Plaintiff had made a sufficient showing and granted Plaintiff's motion for reconsideration, reopening discovery for a period of sixty days. *Id.*

Plaintiff initially deposed three individuals involved in personnel decisions, including Sergeant Vasquez. Dkt. 248 at 3-4. However, discovery disputes arose and Plaintiff filed a motion to compel further depositions and responses by City Defendants. *See id*. The Court held a hearing on December 10, 2018, at which it permitted Plaintiff to take the depositions of former Chief Beck and former Assistant Chief Villegas. Dkt. 259. The Court held a status conference on January 14, 2019, at which it ordered further briefing on the issue of City Defendants' *Monell* liability given the new evidence uncovered by Plaintiff. Dkt. 262.

On January 28, 2019, Plaintiff filed a brief regarding City Defendants' *Monell* liability. Dkt. 265. As a technical matter, no motion is currently pending before the Court. However, the Court construes Plaintiff's *Monell* brief as a new motion for reconsideration, pursuant to L.R. 7-18, of the Court's prior summary judgment and judgment as a matter of law orders as they pertained to City Defendants' *Monell* liability on a ratification theory.

## II.    Legal Standard

As discussed in this Court's June 20, 2017 order, a plaintiff may establish municipal liability under 42 U.S.C. § 1983 if "an official with final policy-making authority ratified a subordinate's unconstitutional decision or action." *Gillette v. Delmore*, 979 F.2d 1342, 1346-47 (9th Cir. 1992) (internal citations omitted); *see also Christie v. Iopa*, 176 F.3d 1231, 1238 (9th Cir. 1999) ("A municipality . . . can be liable for an isolated constitutional violation if the final policymaker 'ratified' a subordinate's actions."). To establish ratification, "a plaintiff must prove that the 'authorized

_____    :    _____
Initials of Preparer

PMC

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**

| Case No. | 2:16-cv-03579-SVW-AFM | Date | April 12, 2019 |
|---|---|---|---|

| Title | *Daniel Garza v. City of Los Angeles et al.* |
|---|---|

policymakers approve a subordinate's decision and the basis for it.'" *Christie*, 176 F.3d at 1239 (quoting *City of St. Louis v. Praprotnik*, 485 U.S. 112, 127 (1988)). "Accordingly, ratification requires both knowledge of the alleged constitutional violation, and proof that the policymaker specifically approved of the subordinate's act." *Lytle v. Carl*, 382 F.3d 978, 988 n.2 (9th Cir. 2004).

The ratification doctrine's causation element is distinct from *Monell* liability's generally. The ratification doctrine "is based on a municipal policymaker's decision that occurs *after* the constitutional deprivation and endorses a subordinate's conduct causing the injury." *Tubar v. Clift*, No. C05-1154-JCC, 2008 WL 5142932, at *5 (W.D. Wash. Dec. 5, 2008) (emphasis added). Thus, a "plaintiff need only show a causal link between the subordinate's conduct and the constitutional injury." *Id.* (quoting *Trevino v. Gates*, 99 F.3d 911, 920 (9th Cir. 1996) (holding that ratification occurs where an official adopts and approves of "the acts of others who *caused* the constitutional violation") (emphasis added)).[1]

Where a plaintiff alleges that a "single decision by a municipal policymaker" is "sufficient to trigger section 1983 liability under *Monell*," "[t]here must . . . be evidence of a conscious, affirmative choice"—that is, a "deliberate choice to follow a course of action [that] is made from among various alternatives" by the final policymaker. *Gillette*, 979 F.2d at 1347. "[T]he identification of those officials whose decisions represent the official policy of the local governmental unit is . . . a legal question to be resolved by the trial judge *before* the case is submitted to the jury." *Jett v. Dallas Indep. Sch. Dist.*, 491 U.S. 701, 737 (1989) (emphasis in original). However, generally, "[o]nce those officials . . . have been identified, it is for the jury to determine whether *their* decisions have caused the deprivation of rights at issue . . . ." *Id.* (emphasis in original).

---

[1]     The Ninth Circuit Manual of Model Civil Jury Instructions sheds additional light on causation in the context of the ratification doctrine. "The concept of ratification often causes confusion in light of the causation requirement; because ratification occurs after an allegedly wrongful act, it cannot have caused that underlying act. . . . Establishing ratification requires proof of the affirmance of a prior act."). Ninth Circuit Manual of Model Civil Jury Instructions No. 9.7 (2017).

:  _____

Initials of Preparer

PMC

# UNITED STATES DISTRICT COURT
## CENTRAL DISTRICT OF CALIFORNIA

### CIVIL MINUTES - GENERAL

| Case No. | 2:16-cv-03579-SVW-AFM | Date | April 12, 2019 |
|---|---|---|---|

| Title | *Daniel Garza v. City of Los Angeles et al.* |
|---|---|

### III.    Discussion

#### A.    Relevant New Factual Allegations

What follows are Plaintiff's new factual allegations related to this new motion for reconsideration. On June 26, 2017, a jury determined that Cardona used excessive and unreasonable force against Plaintiff. Less than two months after the jury verdict, effective on August 6, 2017, Cardona was promoted to Sergeant. Dkt. 265 at 8. Former Chief Beck has now testified that he became aware of the jury verdict soon after the jury's decision through a *Los Angeles Times* article that was published on June 29, 2017 and by two individuals in the LAPD's risk management department. *Id.* In addition, former Chief Beck was made aware of the case, verdict, and jury findings during a July 25, 2017 police commission meeting, when Plaintiff's mother spoke for two minutes before him. *Id.*

Former Assistant Chief Villegas has now also testified that he became aware of the jury verdict within a day or two of the June 29, 2017 *Los Angeles Times* article. *Id.* at 9. Former Assistant Chief Villegas also testified that he would have a one-on-one meeting with Sergeant Vasquez to discuss each promotion. *Id.* The meeting about Cardona's promotion appears to have occurred on July 7, 2017, at which time Sergeant Vasquez sent an email stating that Cardona was "good to go." *Id.* Former Assistant Chief Villegas testified that seeing the *Los Angeles Times* article would have been a "red flag" that would have caused him to reach out to members of internal affairs. *Id.*

On July 17, 2017, former Chief Beck signed Transfer Order No. 8, which promoted Cardona to Sergeant effective August 6, 2017. *Id.* Former Chief Beck later testified that he "could have begun a process that would have [placed Cardona's promotion on hold and opened up a new inquiry]," and that "[he] did [deliberately choose not to open up that process]." Dkt. 265-2, Ex. A at 46:1-13.

#### B.    The Parties' Contentions

There is no dispute as to former Chief Beck's role; both parties acknowledge that, as Chief, he was the final policymaking authority of the LAPD. Rather, the dispute relates to the significance of former Chief Beck's action (or inaction).

_____ : _____
Initials of Preparer

PMC

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**

| Case No. | 2:16-cv-03579-SVW-AFM | Date | April 12, 2019 |
| --- | --- | --- | --- |

| Title | *Daniel Garza v. City of Los Angeles et al.* |
| --- | --- |

 Plaintiff argues that the facts show that former Chief Beck ratified Cardona's unconstitutional actions by making a conscious and affirmative choice to promote Cardona after learning of the jury verdict. Dkt. 265 at 10. According to Plaintiff, former Chief Beck testified that he deliberately decided to promote Cardona rather than placing the promotion on hold. *Id.* at 11. This, according to Plaintiff, "clearly and unambiguously demonstrates that Chief Beck made the deliberate decision to ratify Cardona's unconstitutional and malicious actions." *Id.* Plaintiff cites a Ninth Circuit case, which, according to Plaintiff, held that a chief of police's comments to reporters about his reaction to a jury verdict—that the plaintiff was lucky that he had only gotten a broken nose—could be used as evidence on the issue of ratification. *Id.* at 10; *Larez v. City of Los Angeles*, 946 F.2d 630, 636 (9th Cir. 1991). In addition, the Court stated that, "[t]o the extent the opinions of [a final policymaker] shed light on the operation, custom, or policy of his department, or on his ratification or condonation of the injurious acts, his statements, if admi[ssible . . .], may, of course, be used as evidence on the issue of his liability and that of the [c]ity." *Larez*, 946 F.2d at 645.

 In opposition, City Defendants generally characterize Plaintiff's position as "request[ing] that this Court make new law that a promotion after an adverse jury verdict . . . is tantamount to ratification" and contend that there is "no legal authority that necessitates this determination." Dkt. 269 at 1. City Defendants also make several specific arguments. First, they argue that, if Cardona's "promotion, like the letter [that Plaintiff relied on for his first ratification theory], was based on the LAPD's internal investigation and subsequent determination that Plaintiff's allegations of unauthorized force were unfounded, then the promotion, like the letter, could not have ratified Cardona's conduct." *Id.* at 9. Second, City Defendants contend that Plaintiff's motion for reconsideration is untimely. *Id.* at 10-12. Third, they argue that "no case has required that a police department reevaluate its internal investigation and findings because a jury subsequently disagreed with the department's assessment." *Id.* at 12.

**C.     Ratification Analysis**

 Given Plaintiff's reliance on *Larez*, the case is worth considering in greater depth. *Larez* involved a civil rights action that arose out of an LAPD search of the Larezes's home. *Larez*, 946 F.2d at 634. The search was made regarding a suspected gang killing. *Id.* Despite the fact that another man had already confessed to the murder, LAPD officers obtained a search warrant for the Larezes's home on the belief that the murder weapon might be found there (because the suspect was friends with one of the

_____          :  _____
         Initials of Preparer
                                        PMC

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**

| Case No. | 2:16-cv-03579-SVW-AFM | Date | April 12, 2019 |
|---|---|---|---|

| Title | *Daniel Garza v. City of Los Angeles et al.* |
|---|---|

Larezes). *Id.* The "CRASH" unit conducted the search. *Id.* Upon entering the home, the officers physically and verbally mistreated members of the family, including "hurl[ing] Jessie [Larez] across the room," "kick[ing] him and smash[ing] his face into the floor." *Id.* One officer "pointed his service revolver at Jessie's head and said to him, 'I could blow your fucking head off right here and nobody can prove you did not try to do something.'" *Id.* Jessie Larez sustained a broken nose during the incident.[2] *Id.*

Jessie Larez lodged a complaint with the LAPD. *Id.* at 635. The department's Internal Affairs division assigned a CRASH detective to investigate the complaint.[3] Larez was ultimately notified, in a letter signed by former Chief Gates, that none of the allegations in his complaint could be sustained. *Id.* Consequently, the Larezes filed a lawsuit. *Id.* The Larezes' theory was that the officers involved in the search had violated their constitutional rights to be free from unreasonable searches and the use of excessive force. *Id.* Against former Chief Gates and the City, the Larezes alleged the "perpetuation of unconstitutional policies or customs of excessive force, illegal searches . . ., and inadequate citizen complaint procedures which have the effect of encouraging the excessive use of force." *Id.*

The trial was bifurcated between the case against the officers and the case against Gates and the City. *Id.* The Larezes prevailed against the officers and so the case proceeded to trial on the liability of Gates and the City. *Id.* The Larezes called an expert—a professor and former New York City police officer—who criticized the LAPD's investigation of Jessie Larez's complaint given that "CRASH, the unit responsible for the alleged constitutional violations, rather than Internal Affairs, conducted the investigation." *Id.* He also testified about a two-year comparative study he had conducted, which "found that complaints brought against officers by the department were almost always sustained while citizen complaints were rarely sustained . . .[, which] supported the Larezes' theory that officers were encouraged . . . to use excessive force, knowing that complaints involving a credibility duel between citizen and officer are never sustained." *Id.* at 635-36.

---

[2]    The search involved many other alleged violations—too numerous to list here. *See id.* at 634-35.

[3]    The detective had not personally participated in the search but was from the same unit as those who had. *Id.*

_____ : _____
Initials of Preparer

PMC

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**

| Case No. | 2:16-cv-03579-SVW-AFM | Date | April 12, 2019 |
|---|---|---|---|

| Title | *Daniel Garza v. City of Los Angeles et al.* |
|---|---|

 Former Chief Gates also testified at the trial. *Id.* at 636. After he left the courtroom, he was questioned by reporters about his reaction to the jury verdict against his officers in the first phase of the trial. *Id.* At least three Los Angeles newspapers attributed several statements to him, including that "Jessie Larez had been lucky that he only had gotten a broken nose." *Id.* All of former Chief Gates' statements to the newspapers were admitted over objection at trial. *Id.* Ultimately, the jury found former Chief Gates and the City liable. *Id.*

 Former Chief Gates and the City appealed. In particular, they argued that former Chief Gates' reported statements should not have been admitted. *Id.* at 639. The Ninth Circuit agreed, concluding that the statements were erroneously admitted hearsay and that their admission was not harmless. *Id.* at 641-42. However, the court nonetheless affirmed former Chief Gates' official capacity liability and the City's liability on the ground that there was sufficient evidence of a departmental policy or custom of resorting to the use of excessive force. *Id.* at 647-48.

 *Larez*'s utility in resolving the instant case is ultimately limited. First, the Ninth Circuit did not rely on the police chief's statements in affirming the jury's finding of *Monell* liability because those statements were deemed improperly admitted at trial; rather, the court engaged in a typical *Monell* analysis based on a city's policy or custom. Second, even if former Chief Gates' comments to the newspaper reporters had supported a finding of ratification in *Larez*, his comments were entirely different from the purported ratification in this case. In *Larez*, when explicitly asked about his reaction to the jury verdict against his officers, former Chief Gates stated that Jessie Larez had been lucky that he only had gotten a broken nose. The clear implication was that Larez deserved the broken nose—or worse—and the officer's actions were justified notwithstanding the verdict. Crucially, former Chief Gates was expressly commenting on the specific, unconstitutional actions of his officer. By contrast, here former Chief Beck's alleged ratification is that he signed off on promoting Cardona rather than placing the promotion on hold once he learned of the jury verdict against Cardona. *Larez* supports Plaintiff's argument only in its general statement of law that the opinions of a final policymaker may be used as evidence of ratification. However, this legal principle is not contested. Indeed, that former Chief Beck's statements are relevant to ratification is in large part why the Court reopened discovery.

 The parties have not identified, and the Court has not found, cases that are closely analogous to the instant facts. Two district court cases involve the promotion of officers after the officers engaged in

_____  :  _____
                          Initials of Preparer
                          PMC

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**

| Case No. | 2:16-cv-03579-SVW-AFM | Date | April 12, 2019 |
| --- | --- | --- | --- |

| Title | *Daniel Garza v. City of Los Angeles et al.* |
| --- | --- |

allegedly unlawful conduct. However, these cases are also ultimately unhelpful. In *Bennett v. Cty of Shasta*, No. 2:15-cv-01764-MCE-CMK, 2017 WL 3394128, at *4 (E.D. Cal. Aug. 8, 2017), the plaintiff alleged that an officer unlawfully entered his property and used excessive force. After the purportedly[4] unlawful property raid, the officer was promoted by the Sheriff, which, according to the plaintiff, meant that the officer's conduct during the raid was condoned by the Sheriff and the county. *Id.* The court rejected this argument because the plaintiff "point[ed] to no authority standing for the proposition that the promotion of an officer alone constitutes ratification of that officer's conduct absent some facts from which it can be inferred that the entity's final policymaker actually had knowledge of and approved of the purportedly unconstitutional conduct." *Id.* In other words, there was no evidence in the record to suggest that the Sheriff approved of the allegedly unlawful raid or even knew about it. Lacking such allegations, the court dismissed the *Monell* claim.

*Moua v. McAbee* is similar. No. 1:06-cv-00216 OWW SMS, 2007 WL 3492157 (E.D. Cal. Nov. 14, 2007). In *Moua*, an officer was promoted after an allegedly[5] unlawful search conducted by the officer. *Id.* at *10, 13. The plaintiff argued that the officer's promotion was a ratification by the City of Merced of the officer's alleged unconstitutional conduct. *Id.* at *13. The court first recited the *Christie* standard—that to establish ratification, "a plaintiff must prove that the authorized policymakers approve a subordinate's decision and the basis for it." *Christie*, 176 F.3d at 1239 (internal citation and quotation marks omitted). The court then stated that the plaintiff had "not submitted any evidence that any command level policymaker promoted [the officer] or that any supervisor had knowledge of the alleged

---

[4]    Notably, no legal determination was ever made—by either the court or a jury—that the property raid was unlawful. Unlike the instant case, Plaintiff pursued only municipal liability, and so there was no separate threshold finding that an individual acted unconstitutionally. *Id.* at *3. Rather, the court, in considering a motion to dismiss, noted that it had "previously concluded that Plaintiff failed to state a claim on any of his theories because," as a threshold matter (and among other reasons), "the facts did not support a finding of a constitutional violation." *Id.* at *4. The court then dismissed the plaintiff's Second Amended Complaint, which "fare[d] no better," "[f]or the same reasons" as before. *Id.* Thus, for the purpose of its one-sentence ratification analysis, the court refers to "*purportedly* unconstitutional conduct." *Id.* (emphasis added).

[5]    As in *Bennett*, in *Moua* there was no prior legal determination made that the search was unlawful. Rather, the Court considered ratification based on the plaintiff's allegation that an officer was promoted after the officer engaged in "*alleged* unconstitutional conduct." *Id.* at *13.

|  |  | : |
| --- | --- | --- |
|  | Initials of Preparer |  |
|  |  | PMC |

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**

| Case No. | 2:16-cv-03579-SVW-AFM | Date | April 12, 2019 |
|---|---|---|---|

| Title | *Daniel Garza v. City of Los Angeles et al.* |
|---|---|

conduct, let alone that such a person made a conscious affirmative choice to ratify the conduct in question." *Moua*, 2007 WL 3492157, at *13 (internal citation and quotation marks omitted). The court ultimately granted summary judgment in favor of the City of Merced as to the *Monell* claim. *Id.*

City Defendants argue that these cases demonstrate that "promotion does not constitute *per se* ratification." Dkt. 269 at 16. This is certainly true; an officer's promotion that occurs after the officer's unconstitutional action is not *necessarily* ratification. But this does not preclude the *possibility* that the promotion is ratification. *Bennett* and *Moua* do not demonstrate or even suggest that a promotion can *never* constitute ratification; rather, ratification requires a certain evidentiary basis that was lacking in those cases. In sum, a promotion of an officer that occurs after the officer's unlawful act is neither *per se* ratification nor *per se* not ratification; whether it constitutes ratification depends on the factfinder's findings and inferences based on the evidence in the record. In other words, unless the undisputed evidence is so compelling that no reasonable jury could conclude otherwise, ratification in this context is not a question of law that is suitable on motions for summary judgment or judgment as a matter of law. Thus, the relevant inquiry at this stage is whether, given the facts before the Court, the Court can hold— as it did in its previous orders—that, as a matter of law, there is no triable issue regarding City Defendants' *Monell* liability on a ratification theory. If not, the Court must grant Plaintiff's motion for reconsideration and permit the case to proceed to a jury.

The evidence in the record on the issue of Cardona's promotion is not so compelling in favor of City Defendants that no reasonable jury could rule in favor of Plaintiff. It is undisputed that former Chief Beck knew about the jury verdict when he signed Transfer Order No. 8, which formalized Cardona's promotion. Former Chief Beck has now testified that he could have begun a process that would have placed Cardona's promotion on hold and opened a new inquiry, but he chose not to do so by signing Transfer Order No. 8. The significance of these facts is within the purview of a jury. Specifically, a reasonable jury could—but would not necessarily—find that former Chief Beck's testimony is sufficient evidence to establish that former Chief Beck approved of Cardona's unconstitutional conduct and made a deliberate choice to permit Cardona's promotion to proceed rather than overruling the promotion or opening an investigation, and that such a deliberate choice constitutes ratification.

City Defendants' arguments in opposition to Plaintiff's motion are unavailing. First, this

_____ : _____

Initials of Preparer

PMC

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

## CIVIL MINUTES - GENERAL

| Case No. | 2:16-cv-03579-SVW-AFM | Date | April 12, 2019 |
|----------|------------------------|------|----------------|

| Title | *Daniel Garza v. City of Los Angeles et al.* |
|-------|-----------------------------------------------|

situation is distinguishable from the letter that the Court considered and rejected as evidence of ratification in its June 20, 2017 order. Dkt. 150. That letter, an internal LAPD document that exonerated Cardona, was written before the jury verdict. Thus, it is entirely different from the ratification theory that Plaintiff is now advancing. Second, Plaintiff's motion is not untimely. By its plain text, L.R. 7-18 "provides for no time limitation for a motion for reconsideration." *Williams v. UMG Recordings, Inc.*, 281 F. Supp. 2d 1177, 1185 n.13 (C.D. Cal. 2003); *Ketab Corp. v. Mesriani Law Grp.*, No. 2:14-cv-07241-RSWL (MRW), 2015 WL 2084469, at *2 n.4 (C.D. Cal. May 5, 2015). Courts have interpreted the rule as "providing for a reasonable time within which to seek reconsideration." *Meredith v. Erath*, No. 99CV13100, 2001 WL 1729626, at *1 (C.D. Cal. Sept. 19, 2001); *see also In re Katz Interactive Call Processing Patent Litig.*, No. CV 2:07-2134-RGK-FFMx, 2012 WL 12906389, at *2 (C.D. Cal. Dec. 18, 2012) (noting that L.R. 7-18 "requires parties to file such motions within a reasonable time period"). The Court does not view the delay in this case as necessarily unreasonable. Third, at this stage it is not relevant whether, as City Defendants allege, any case has required that a police department reevaluate its internal investigation and findings when a jury subsequently disagrees with the department's assessment. The Court is not concluding as a matter of law that former Chief Beck ratified Cardona's unconstitutional conduct; rather, the Court is merely stating that, on this record, it cannot make any determination as to ratification as a matter of law.[6]

## IV.    Conclusion

For the above reasons, the Court GRANTS Plaintiff's new motion for reconsideration of the Court's prior summary judgment order, Dkt. 150, and judgment as a matter of law order, Dkt. 197, insofar as the orders held that City Defendants are not liable on a *Monell* ratification theory as a matter of law.

---

[6]     This statement, of course, does not preclude City Defendants from arguing at trial that former Chief Beck did not ratify Cardona's conduct because, for example, in signing Transfer Order No. 8 former Chief Beck was simply relying on the police department's internal investigation and findings, which he found persuasive despite the jury verdict. A jury would then assess the weight of this and other arguments in light of the fact that City Defendants were apparently convinced even before the trial that Cardona had acted unlawfully because they declined to defend him and argued before the jury that Cardona had acted with malice and had knowingly deprived Plaintiff of his rights.

_____    :  _____
Initials of Preparer

PMC

# UNITED STATES DISTRICT COURT
# CENTRAL DISTRICT OF CALIFORNIA

## CIVIL MINUTES - GENERAL

| Case No. | 2:16-cv-03579-SVW-AFM | Date | April 12, 2019 |
|---|---|---|---|
| Title | *Daniel Garza v. City of Los Angeles et al.* | | |

      A trial on the issue of City Defendants' *Monell* liability will take place on June 18, 2019 at 9 a.m., with a pre-trial conference on June 10, 2019 at 3 p.m.

      IT IS SO ORDERED.

                                    :

Initials of Preparer

                               PMC